# Hand *et al. v.* Stapleton *et al.*

### Bill in Equity for an Injunction.

1. *Statute providing for removal of county seat of Baldwin county; has never gone into effect.*—The provisions of section 10 of the act "to provide for the removal of the county seat of Baldwin county" constitute a condition precedent to said act taking effect and becoming operative; and therefore since the court-house commissioners failed to ascertain that the county of Baldwin could contribute the amount of money necessary for the building of a courthouse and jail at Bay Minette during the year 1901, without increasing the tax rate of said county, said act has never become operative. (TYSON, J., *dissenting.*)

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. THOS. H. SMITH.
This is the second appeal in this case. The averments of the bill as originally filed show the following facts: The commissioners appointed by an act of the General Assembly entitled "An act to provide for the removal of the court house seat of Baldwin county, Alabama, from Daphne, in said county, to Bay Minette, in said county," (Acts of 1900-1901, page 754), raised a subscription of $3,050.00 for the construction of the court house, and obtained a deed to a court house site to be made to the county. At its February term, 1901, the commissioners of Baldwin county certified: "That they could contribute and do hereby contribute to the building of a court house and jail at Bay Minette in said county of Baldwin, the sum of $2,500.00, and the judge of probate is hereby authorized and directed to draw a warrant on the county treasury for the amount so allowed." The court did not, however, ascertain that the county of Baldwin could contribute that amount of money to the building of a court house and jail at Bay Minette *during the year 1901 without increasing the existing rate of said county.* The special commissioners

appointed by the removal act, purporting to act under authority of the act of the General Assembly, "To establish a high-grade of public schools," etc., (Acts of 1900-1901, page 2094), in connection with the act under which they were appointed, conveyed the county court house and jail at Daphne to the county of Baldwin for school purposes, and the county commissioners gave the court house commissioners therefor warrants of the county for $6,000.00, payable in installments of $2,000.00 each, payable on the 15th day of November, 1902, and on the 15th day of November, 1903, and on the 15th day of November, 1904. After the subscription had been obtained, and the deed to the site had been made, but before any ascertainment had been made by the county commissioners, or by the court house commissioners, that the county could pay the necessary sum for the erection of the court house out of any funds on hand, or which would be obtained during that year without increasing the taxes for 1901, the court house commissioners advertised for bids for the construction of the court house. They, at that time, estimated that the court house could be built for $18,000.00; they had $3,050.00 derived from subscriptions; the equivalent of $1,300.00 more donated by the railroad, and they estimated that the entire balance of $13,650.00 would have to be paid by the county of Baldwin in one form or another. Of this sum they estimated that $6,000.00 would be paid under the form of a sale of the court house at Daphne under the provisions of the act of March 2, 1901, to establish a high-grade public school, etc., such payment to be made in sums of $2,000.00 each, payable respectively as stated. The court house commissioners did not ascertain that either the $6,000.00 or the balance of $7,650.00 could be paid by the county out of the monies then in its treasury, or that would come into such treasury during the year 1901, without increasing the rate of taxation for that year. So far as the $2,500.00 which had already been authorized by the county commissioners was concerned, the court house commissioners assumed that the action of the county commissioners was final as to that matter, and that it was not necessary for them to ascertain that

[Hand *et al.* v. Stapleton *et al.*]

that sum could be paid out of funds in the county treasury without increasing the rate of taxation for 1901. As to the remaining sum that they estimated the county would have to pay, it was known that it could not be paid out of funds in the county treasury or that would come into the county treasury during the year 1901 without increasing the rate of taxation for that year, but it was estimated that it could be paid by the county without increasing the rate of taxation by arranging such payments in annual installments commencing in 1905. When the bids for the court house were received, it was found that the construction thereof would require the expenditure of $21,000.00, and it was agreed that of this sum $12,000.00 should be paid in cash as the work progressed, and the remaining $9,000.00 were to be paid when the court house and jail were completed in obligations of the county, payable one thousand dollars on the first day of November, 1905, and a like sum on the first day of November of each year thereafter until the obligation was paid, such obligation to bear interest from the date of issue at the rate of five per cent.

The original bill in this case was filed by the appellees as citizens and taxpayers of Baldwin county, seeking to enjoin the payment by the county of said several sums, viz.: the $2,500.00 authorized by the county commissioners, the $6,000.00 which purported to be the purchase money for the court house and jail, and which was made payable in installments of $2,000.00 on the 15th days of November, 1902, 1903, and 1904, respectively, and the balance of $8,150.00 in said several installments of $1,000.00 each, commencing in 1905, and payable annually until the entire sum was satisfied.

The grounds upon which the appellees sought this relief in their original bill were as follows: 1. Because the act authorizing the removal of the court house was unconstitutional and void. 2. Because the provisions of said act were so self-contradictory and uncertain as to make the act itself inoperative; and, 3. Because the provisions of the tenth section of the act had never been complied with so as to put the act into effect.

The bill as thus framed was demurred to, the demurrers overruled, and the case appealed to the Supreme Court. The cause was there considered, and the decree of the chancery court reversed, and the cause remanded. 135 Ala. 156.

After the case was remanded, the bill was amended so as to specially allege the fact that the court house commissioners had never ascertained that the court house and jail could be built at Bay Minette upon the lot donated out of the subscription, the proceeds arising from the sale of the property owned by the county at Daphne, and such sums of money as the county could appropriate during the year 1901 without increasing the tax rate for that year; and affirmatively averred that, on the contrary, the court house commissioners ascertained that such payments could only be made by pledging the revenue of the county through a long series of years, or by increasing the rate of taxation. The amendment in the fifth paragraph of the bill also charges that the acts of March 2, 1902, is unconstitutional and void, and that, therefore, the payments provided to be made by the county as purchase money for the court house and jail at Daphne were not authorized by that act, and if made at all, had to be made under the act authorizing the removal of the court house.

To the bill as amended the respondents demurred, assigning in various ways the ground that there was no requirement in the act approved February 5th, 1901, providing for the removal of the county seat of Baldwin county, that all moneys to be paid by said Baldwin county for said new court house should be paid out of moneys in its treasury, or that should come into its treasury during the year 1901, without increasing the rate of taxation.

The respondents also separately demurred to the fifth paragraph of the amended bill because it does not show how, or in what particular the act referred to therein was unconstitutional and void. The respondents also moved to dismiss the bill for want of equity. Upon the submission of the cause on the demurrers and on the motion to dismiss the bill for the want of equity, the chan-

[Hand *et al.* v. Stapleton *et al.*]

cellor rendered a decree overruling each of the demur-
rers, and also overruling the motion to dismiss. From
this decree respondents appeal and assign the rendition
thereof as error.

ERVIN & MCALEER and OSCAR HALL, and W. A. COL-
LIER, for appellants.—The seventh paragraph of the bill
shows that the commissioners did determine that the
plan they adopted would remove the county site and
pay for the court house and jail without increasing the
tax rate. Can it be doubted that they honestly believed
when they so decided, that the act authorized them to
so decide? Hence, under our contention, the act became
operative and the court house was removed.—7 Am. &
Eng. Ency. of Law, 1032; *Lynde v. The County*, 16 Wal.
13; and *Colomo v. Eaves*, 92 U. S. 484.

GREGORY L. & H. T. SMITH, *contra.*—The act provid-
ing for the removal of the court house of Baldwin coun-
ty was not operative until the court house commission-
ers appointed thereby ascertained that the court house
could be built out of subscription, the proceeds of the
sale of the court house and jail property at Daphne and
monies that could be appropriated during the year 1901,
without increasing the existing rate of taxation.—*Hand
v. Stapleton, et al.*, 135 Ala. 156.

A resident and tax-payer of a county may by bill in
chancery enjoin the illegal payment of county funds.
*N. O. & M. C. R. R. vs. Dunn*, 51 Ala. 134; *Allen v. In-
tendent and Council of Fayette*, 89 Ala. 643.

It was contended in the chancery court that the de-
murrers were well taken, because all acts done under the
act authorizing the removal of the court house had, by
a subsequent act of the Legislature, been ratified and
confirmed. This validating act was adopted after the
original bill of complaint was filed, and its effect is not,
therefore, before the court, and can only be brought be-
fore the court by a supplemental answer.—*City of Mo-
bile v. L. & N. R. R. Co.*, 124 Ala. 132. The bill in this
case, however, had been filed before this validating act
was adopted and under the constitution of 1901 the Leg-

islature could not thereafter take away the cause of action.—Section 95, Constitution of 1901.

TYSON, J.—This is a second appeal; the decision on the former being reported in 135 Ala. 156.

On the return of the case the bill was amended so as to aver that the condition set out in the tenth section of the act, (Acts, 1900-1, p. 754), under which the court house had to be moved, never happened, because the board of commissioners appointed under the act did not ascertain "that the amount to be paid by said county (Baldwin) for building said court house and jail at Bay Minette, in addition to the solvent donations secured, and the amount that can be realized from the sale of the court house and jail and the real estate owned by said county at Daphne," would not require an increase of the present tax rate of said county to pay the same, and that it was a violation of said act for the authorities to arrange as they did for the payment of the amount to be contributed by the county, by warrants falling due in subsequent years though without requiring an increase of the present tax rate of the county.

The lower court, conceiving that we had held on former appeal that the county contribution had to be made from the tax levy of the single year of 1901, held that the removal of the court house to Bay Minette was unauthorized because it was shown that the county contribution was greater than could be paid from the taxes of 1901, and because the payment was distributed by warrants against the collection of subsequent years though without any increase of the present rate of taxation.

We did use an expression susceptible of the construction, viz.: that the entire contribution of the county had to be out of the taxes of 1901, but the point was not then under discussion, and the expression was inadvertent.

We think the whole context of the act shows that the Legislature did not contemplate that the new court house and jail would or could be built with the county contribution limited to what the taxes of 1901 would enable the court of county commissioners to contribute. The single purpose of the legislative restriction was

that the object should be accomplished without the necessity of increasing the then tax rate.

And the nature of the undertaking and the words of the statute show that the use of taxes for future years at the same tax rate was contemplated. The Legislature must be held to have contemplated that suitable structures, and, therefore, buildings of considerable cost would be erected, and to have known the insufficiency of the taxes of a single year to pay the portion of the expense that would naturally fall upon the county, notwithstanding the subscriptions and donations, and the sale of the property of the county at Daphne, provided for in the act. Then the words of the statute do not forbid the use of the county fund for subsequent years, but contemplated such use. The taxes for 1901 had already been levied and there could be no increase of the rate except under the general powers given to levy special taxes for public buildings. It was to put a negation upon this power to increase tax rates by special levy that inspired the proviso that the county contribution should be paid out of money which "is on hand or *can be raised* by said county without increasing the present tax rate." Sec. 7, p. 755, of said Acts. It appears that this was done by giving to the contractor warrants against taxes of future years in amounts not requiring any increase of the tax rate for their payment.

The sixth section of the act requires the commissioner's court, at the February term, 1901, to ascertain and certify to the board of commissioners appointed by the act, "what amount of money the county of Baldwin can contribute to the building of a court house and jail at Bay Minette during the year 1901, without increasing the tax rate of said county." Now, is it a fair construction to say that the words "during the year 1901," were intended to qualify "building" in the year 1901? Is it not the natural and fair construction that the contribution referred to was one to be made during the year 1901, (that is, out of revenue of that year), for the building at Bay Minette? We think the latter is the proper construction, and this view is supported and confirmed by the language employed in the seventh and tenth sections.

36

It is provided in the seventh that the cost as to the county should be allowed by orders on the county treasury, provided, that the amount "is on hand and can be raised by said county without increasing the present tax rate." And the same proviso is in effect found in the tenth, which makes the condition on which the act is to go into effect to rest upon the ascertainment that the county contribution would not require an increase of the present tax rate *"to pay the same."*

"Raising" money contemplates a sale of property for money or a borrowing on engagements to pay in the future. The Legislature well knew that the county had no property to sell, and therefore in authorizing payments to be made with money on hand or "raised" must have had reference to payments out of revenue of subsequent years arising without any increase of the tax rate, especially as the contribution that could be made for 1901 was to be certified as a preliminary proceeding. The transfer or delivery of the warrants falling due for subsequent years, to the contractor as cash, is the same as if they had been sold and the money *raised* thereby, and then paid out to the contractor.—*South Dakota v. N. Co.,* 192 U. S. 286.

The important question presented, to state it, in conclusion, concretely is, whether under the act of 1901, the contribution of the county could be paid in several years or had to be paid out of the revenue of 1901.

The logical result from what we have said is that the debt could be distributed for several years so as to be paid out of the revenue of the county during those years, without any increase of the then existing tax rate.

The demurrer to the bill, in my opinion, should have been sustained. The other members of the court, however, hold that the act was properly construed on former appeal, and that under the averments of the bill it never went into effect. This being true, the averments contained in the fifth paragraph of the bill are wholly immaterial, and the overruling of the ground of demurrer interposed to it is innocuous.

The decree appealed from is affirmed.

TYSON, J., *dissenting.*